## MAYES *v.* McCORMICK HARVESTING MACHINE CO.

1. A contract for the sale of a machine stipulated: "If upon one day's trial the machine should not work well, the purchaser shall give immediate notice to [the seller, or its agent], and allow time to send a person to put it in order. If it can not then be made to work well, the purchaser shall return it at once to the agent of whom he received it, and all cash and notes received in settlement will be refunded. *Held*: (*a*) That it was not, under such a contract, incumbent on the seller to make the machine work well on the first day's trial thereof, but, upon failure to do so, it was incumbent upon the purchaser to give the notice required by the contract, and allow the seller reasonable time to have the machine put in good working order. (*b*) If after such notice the seller, within a reasonable time, offered to have the machine put in such order, and the purchaser refused to allow an opportunity to do so, he was bound to keep and pay for the machine.

35

2. It was, upon the trial of an action upon such a contract, admissible to prove the purchaser's satisfaction with the operation of another machine, there being evidence tending to show that it was identical in character and construction with the machine purchased, and that the latter machine operated as well as the former.

3. There being no error of law committed, and there being sufficient testimony to sustain the finding of the jury, the court did not err in overruling the motion for a new trial.

Argued March 14, — Decided April 10, 1900.

Complaint.    Before Enoch Faw, judge pro hac vice.    Cobb superior court.    March term, 1899.

*Morris & Green,* for plaintiff in error.
*Frey & Frey* and *W. R. Power,* contra.

LEWIS, J.    This was a suit by McCormick Harvesting Machine Company against M. A. Mayes, upon a written contract entered into by him for the purchase of a machine for harvesting grain.    The portion of the contract necessary to a clear understanding of the issues involved is in the following language: " This machine is warranted to be well made, of good material, and durable with proper care.    If upon one day's trial the machine should not work well, the purchaser shall give immediate notice to said McCormick Harvesting Machine Company, or their agent, and allow time to send a person to put it in order. If it can not then be made to work well, the purchaser shall return it at once to the agent of whom he received it, and all cash and notes received in settlement will be refunded."    On the trial of the case it appeared from the testimony in behalf of plaintiff below that the machine purchased was shipped to its agent, Schilling, at Marietta, Ga., and that it was delivered to the defendant in ample time for the harvesting of his grain, according to contract.    A machine of identically the same make was also purchased by a neighbor from the same company, and delivered to him about the same time.    Defendant desired to see the operation of his neighbor's machine before having his put up, and, after seeing it in operation, the evidence tended to show he expressed entire satisfaction with it, and got the agents of the company to go over to his house, and put up his machine.    There was conflict in the testimony as to whether this machine operated to the satisfaction of the defendant when it was tested that same

day in cutting grain for a short while after it was put up, the defendant contending that it did not operate well, and that he endeavored to get the company's agents to remain over until next morning and fix the machine in proper condition, and that he notified them, if they did not do it, that he would return the machine. This was denied by witnesses in behalf of plaintiff. It appears from the evidence that the next day the defendant called upon the general agent at Marietta, complained of the machine, offered to rescind the contract, and to deliver the machine wherever the agent might designate. It further appears that the agent at Marietta, on receiving notice of dissatisfaction from the purchaser, sent, in a day or two thereafter, two agents of the company to put the machine in order. Upon going to the premises of the defendant where the machine was located, he refused to allow them to undertake to put it in order, claiming that he had a right to rescind his contract, for the reason that the first agents who went there did not remain and place it in order, and he had proceeded to gather his grain by other means. The jury returned a verdict for the plaintiff for the amount sued for; whereupon the defendant made a motion for a new trial, which was overruled. He excepts to the judgment of the court below in overruling his motion.

1. One ground in the motion for a new trial is that the court erred in charging the jury as follows: "If the machine was put up — this machine that Mr. Mayes bought, he had a right to one day's trial to see whether or not the machine could be made to work well, and if it did not work well he was to give immediate notice to the agents of this company, and he was to allow time for the company to send somebody to put the machine in order. By allowing time is meant reasonable time, or sufficient time to perform that work." This charge was objected to upon the ground that movant's contention was, that when plaintiff's agents put up the machine it did not work well, that he then and there tried to get them to put it in order so that it would work well, and notified them that if they left without fixing it he would not take the machine, and that in the face of this notice they left and refused to put it in order. This theory of the defense is based upon the contention that the defendant had a

right under his contract to rescind the sale and deliver back the machine after failure of plaintiff's agents to put it in order so that it would work properly on the first day of its trial. We think this view is contrary to the express stipulations of the contract above quoted, which declares that, "If upon one day's trial the machine should not work well, the purchaser shall give immediate notice to said [plaintiff], or their agent, and allow time to send a person to put it in order." Under the terms of the contract it was clearly the duty, then, of the purchaser to have given notice to the agent in Marietta, and to have allowed the company an opportunity of having the machine put in good working order, before the purchaser had a right to rescind his contract. The request to the operatives sent out to put up the machine, if in fact made, was not the notice to the company contemplated by the terms of the contract. We think the charge of the court, in the light of the contract, was right.

After the agent at Marietta received the notice, there was sufficient testimony for the jury to infer that within a reasonable time he sent workmen, who offered to put the machine in order. We think, under the contract, that the refusal of the purchaser to allow this opportunity bound him to keep and pay for the machine. This is covered by the charge of the court excepted to in another ground of the motion for a new trial; the court instructing the jury, in effect, that if plaintiff had sent workmen in time, under their contract, to do the work by putting the machine in proper order, and the defendant refused to let them do it, then the plaintiff would be excused from putting it in order, and the defendant would be bound to pay for it; but if, upon giving such notice, they did not appear and put in it order in time, then the defendant would be excused, and would not have to pay for it.

2. Complaint is made in the motion for a new trial that the court erred in admitting in evidence, over the objection of defendant's counsel, the testimony of a witness to the effect that the defendant made no objection whatever to the operation of the machine purchased by his neighbor, Frey. There was uncontradicted evidence introduced tending to show that this machine was identical in character and construction with the machine

purchased by the defendant, and that the latter machine operated as well as the former. We, therefore, think there was no merit in this ground of the motion.

3. The only remaining grounds in the motion for a new trial were the general ones, that the verdict was contrary to law and the evidence. We think there was sufficient evidence to sustain the verdict, and, no error of law having been committed, the judgment of the court denying the motion for a new trial was right. *Judgment affirmed. All the Justices concurring.*