MARYLAND INDEPENDENT AUTOMOBILE DEALERS ASSOCIATION, INC. ET AL. *v.* ADMINISTRATOR, MOTOR VEHICLE ADMINISTRATION

[No. 356, September Term, 1978.]

*Decided December 7, 1978.*

8

The cause was argued before LOWE, WILNER and MACDANIEL, JJ.

*William L: Putzel* and *Ronald J. Kearns,* with whom were *Putzel, Putzel & Danoff, P.A.* on the brief, for appellants.

*Joanna S. LeHane, Assistant Attorney General,* with whom was *Francis Bill Burch, Attorney General,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

Commercial Law article, § 2-316 describes various ways in which a seller of goods may limit or negate implied warranties that otherwise might be applicable to the sale. Section 2-316.1, however, which immediately follows § 2-316, states that the provisions of § 2-316 "do not apply to sales of consumer goods, as defined by § 9-109." Section 9-109 defines as "consumer goods" those that are "used or bought for use primarily for personal, family or household purposes." No one contests that automobiles, whether new or used, that are bought primarily for personal, family, or household use are "consumer goods" as so defined. *See Houck v. DeBonis,* 38 Md. App. 85 (1977), footnote 2 at 87.

Having excluded sales of consumer goods from the provisions of § 2-316, § 2-316.1 goes on to state in its next succeeding paragraph (hereafter referred to as § 2-316.1 (2)):

> "Any oral or written language used by a seller of consumer goods and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose or to exclude or modify the consumer's remedies for breach of those warranties, is unenforceable. However, the seller may recover from the manufacturer any damages resulting from breach of the implied warranty of merchantability or fitness for a particular purpose."

The Motor Vehicle Administration (MVA), a unit within the State Department of Transportation, is the agency that licenses, and to a degree, regulates, automobile dealers and salesmen. *See* Transportation article, title 15, subtitles 3 and 4. With more particular reference to this case, § 15-312 provides that a dealer may not willfully fail to comply with the terms of a warranty or guarantee; § 15-315 authorizes MVA to suspend, revoke, or refuse to renew the license of any dealer who fails to comply with any provision of the Maryland Vehicle Law relating to the sale of vehicles, which would include § 15-312; and § 12-104 (b), dealing with the general powers of MVA, authorizes it to adopt rules and regulations to carry out those provisions of the Maryland Vehicle Law "that relate to or are administered and enforced by [MVA]".[1]

Presumably in furtherance of this regulatory and rule-making authority, and with tacit, but nonetheless apparent, reference to Commercial Law article, § 2-316.1, MVA, on May 16, 1976, adopted Regulation 11.02.03.83, which provides:[2]

> "A warranty may not contain language which specifically disclaims any implied warranty of merchantability or fitness. Examples of prohibited disclaimers are as follow.
>
> "A. 'This warranty is expressly in lieu of any other warranty, express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and any other obligations or liabilities on the seller's part,' or similar language that could be construed by a consumer to limit his recourse to the terms of express warranties.

---

1. The term "Maryland Vehicle Law", though not statutorily defined, is intended to refer to titles 11-27 of the Transportation article, being those titles formerly comprising art. 66½ of the Code. *See* Revisor's Note to § 11-101.

2. This regulation has not yet appeared in COMAR. *See, however,* Md. Register, March 17, 1976, p. 365; May 12, 1976, p. 530; Md. Agency Rules and Regulations, § 11.02.03.83.

"B. 'This vehicle is being sold as is, without any implied or express warranty of merchantability,' or similar language.

"C. 'Sold used with 50-50 warranty. The dealer hereby guarantees this vehicle for _____ days after _____ 19 ___ with the understanding that necessary repairs made within this period of time will be charged half to the buyer and half to the dealer, of total retail cost of parts and labor used,' or similar language."

The Maryland Independent Automobile Dealers Association, appellant, sued MVA and its administrator initially seeking a declaratory judgment that § 2-316.1 does not apply to the sale of used cars, and that its member dealers therefore have a right to sell used cars on either an express warranty or an "as is" basis. Following the sustaining of a demurrer to this complaint, appellant filed an amended complaint seeking essentially the same relief, but through a challenge to the MVA regulation. The specific relief requested was a judgment declaring that § 2-316.1 (2) does not apply to "used motor vehicles", and that the complainants are "thereby not required to comply with the terms thereof", and an injunction restraining MVA and its administrator "from exercising any of the powers respecting the enforcement of the implied warranty provisions of [§ 2-316.1 (2)] against the Complainants." This appeal is from the denial of that relief by the Circuit Court for Baltimore County.

Although the parties differ in their statement of the questions presented, it appears that there are but two issues to be decided: (1) does § 2-316.1 (2) apply to the sale of used automobiles which otherwise fall within the definition of "consumer goods", and (2) if so, may MVA enforce that section in the manner reflected by its regulation 11.02.03.83?

### (1) *Statutory Interpretation*

There is nothing within § 2-316.1 (2) itself that facially would restrict its application to the sale of "new" goods, or,

conversely, that would exclude from its provisions the sale of "used" goods. Appellant seeks to read that restriction, or exclusion, into the law by interpreting the second sentence in paragraph (2) — "However, the seller may . . ." — as a condition precedent to the first sentence in that paragraph. In other words, its position seems to be that the restrictions contained in the first sentence apply only if the seller has an actual remedy under the second sentence, and, therefore, language which modifies or excludes an implied warranty is only unenforceable if the seller is able to recover from the manufacturer damages resulting from breach of an implied warranty. From this rather tenuous base, it argues that, with respect at least to used cars that, for one reason or another, are no longer subject to manufacturer's warranties at the time of the resale, the dealer, or seller, cannot avail himself of this condition, and, for that reason, the requirement itself does not apply.

As § 2-316.1 (2) is now written, there is no basis whatever for the interpretation suggested by appellant. The two sentences comprising that paragraph express complete, unambiguous, and independent thoughts, neither being conditioned upon the other. The first sentence concerns the relationship between the seller and buyer of consumer goods, and makes absolutely clear, without condition or equivocation, that any attempt by the seller in such a transaction to modify or exclude implied warranties is unenforceable. As between seller and buyer, there are no "ifs, ands, or buts." What the second sentence, which was added to the original bill by amendment, does, and was obviously intended to do, is to allow the seller, who might otherwise have no standing in the matter, to recover from the manufacturer if indeed there has been a breach of any of its (the manufacturer's) implied warranties. There is no justification in the plain wording of the statute, in the wording of the predecessor statute, or in the legislative history of the statute for the proposition that the protection afforded to consumers by the first sentence is in any way subject to abrogation based upon whether the seller may or

may not have a cause of action against the manufacturer on its implied warranties.[3]

Thus, the attack by appellant upon the statute itself is unfounded. Paragraph (2) clearly applies to the sale of all "consumer goods", new or used, without regard to whether the seller, in any given case, has a viable action against the manufacturer.[4] *See Mangieri v. Admiral Pontiac, Inc.,* Circ. Ct., Anne Arundel Co., 14 U.C.C.R.S. 82 (1974). *Also Testo v. Russ Dunmire Oldsmobile, Inc.,* 554 P. 2d 349 (Wash. App., 1976); *Moore v. Burt Chevrolet, Inc.,* 563 P. 2d 369 (Col. App., 1977) and cases cited therein.

### (2) *Validity of MVA Regulation*

Appellant's contention here is that, even if, under § 2-316.1 (2), disclaimers are "unenforceable", there is no warrant for MVA to "enforce" that provision. We find that argument equally lacking in merit. As noted, MVA is specifically authorized to adopt regulations to carry out the provisions of the Vehicle Law that relate to or are administered or enforced by it. One of these, in the subtitle dealing with the licensing of dealers, prohibits dealers from willfully failing to comply with a warranty. Transportation article, § 15-312 (7). A disclaimer made in violation of § 2-316.1 (2) may well constitute such a failure, thereby subjecting the dealer to disciplinary action by MVA.

---

3. Appellant points to the fact that, as originally enacted as § 2-316A of art. 95B by Laws of Md., 1971, ch. 505, what is now paragraph (2) of § 2-316.1 contained but one sentence. It stated: "Any language, oral or written, used by a seller of consumer goods and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose or to exclude or modify the consumer's remedies for breach of those warranties, shall be unenforceable, *provided however,* that the seller may recover from the manufacturer any damages resulting from breach of the above-described warranty." (Emphasis supplied.) Appellant seeks to construe the connective "provided however" as the conditioning element. Such a construction is not only unjustified by the language itself; it would seem to contravene the intent and purpose of the bill, as expressed in its title.

4. Parenthetically, we note that, even if appellant's construction were correct — that the first sentence is conditioned upon the second — that would still not justify the relief sought. The requirements of the first sentence, even under that interpretation, would continue to apply where the vehicle sold remained subject to the manufacturer's implied warranties.

If a dealer were charged with a violation of § 15-312 (7), MVA would be authorized to investigate the charge and, if it found against the dealer, to suspend or revoke the dealer's license. Transportation article, § 15-315. Obviously, such a procedure involves the "enforcement" of Commercial Law article, § 2-316.1, but in a negative or punitive way. That being plainly authorized (and, indeed, unchallenged by appellant) we fail to see how or why MVA would not also have the authority to adopt an affirmative regulation making clear its intention to enforce that provision, and, at the same time, making clear what types of conduct it will consider to be in contravention of the statute.

> *Order denying declaratory relief affirmed; appellants to pay the costs.*